**FRIBERG et al. v. SCURRY et al.**
**No. 12440.**

Court of Civil Appeals of Texas. Fort Worth.
July 12, 1930.

Rehearing Denied Oct. 4, 1930.

See, also, 32 S.W.(2d) 637.

Wallace, Taylor & Vickrey, of Dallas, and Smoot & Smoot, of Wichita Falls, for relators.

F. W. Fischer, of Wichita Falls, for respondents.

CONNER, C. J.

J. F. Friberg, J. R. Ogle, and some 40 others, hereinafter referred to as relators, filed in this court, as one having original jurisdiction, their petition for mandamus and injunction. Complaint is made of Edgar Scurry, chairman of the County Executive Committee of the Democratic Party for Wichita County, and against K. H. Anderson and some 40 other precinct chairmen who with the county chairman compose the Democratic Executive Committee of Wichita County.

The petition is duly verified, and alleges that the relators are each and all resident citizens of Wichita county, Tex., and each and all duly qualified voters therein, and that each is a Democrat, having duly paid his poll tax for the year 1929, and eligible under the Constitution and laws of the state to hold office as members of said county Democratic executive committee if elected thereto, and were each and all eligible to be nominated by the Democratic Party as candidates for the several positions to which they aspire. It was further alleged that on the 14th day of June, 1930, each of the relators, except J. R. Ogle, made application to the respondent Edgar Scurry as chairman of said committee to have their respective names placed on the official ballots as candidates for members of such executive committee from their severally designated precincts; that the name of the relator J. R. Ogle was presented on the petition of 40 voters, as required by statute, requesting that his name be placed on the primary ticket as a candidate for chairman on the Democratic Executive Committee of Wichita County. These several applications seem to be in due form and are not complained of, except it is urged that the application of Ogle was not indorsed by him as required by article 3113, Rev. Civ. Statutes of 1925.

The relators further allege, in substance, that on the presentation of the petitions referred to on the 16th day of June, 1930, they were each and all rejected and that the names of others were substituted as candidates for the positions in question. The relators urged that the said executive committee will fail and refuse to include the names of the relators, or any of them, upon the official ballot of the Democratic Primary election to be held on July 26, 1930, and exclude them therefrom. That the ballots for said election are already prepared in substance and form with the names of the relators excluded; that the committee is preparing to and will within a

short time cause such official ballots to be printed without including the names of the relators, whereby relators will be deprived of the right to submit their names to the electorate of such Democratic Party of Witchita county as candidates for the positions to which they aspire, and that because of the short period of time before such primary there is no legal remedy which will avail the relators except such as this court may afford by the issuance of its writ of mandamus commanding and directing said executive committee, the chairman and members thereof, to place and include the names of the relators on such official ballots as candidates for the respective offices named in their application and requests.

The respondents in an unverified petition insist, in substance, first, that this court is without jurisdiction; and, second, that it is apparent from the face of relators' petition that no two or more of them have a common or joint interest in the result of the suit, and hence that there is a misjoinder of causes of action. Other contentions in behalf of respondents will be noted in the further course of this opinion.

The jurisdiction of this court is conferred by Senate Bill No. 16 (Acts 1930, 4th Called Sess., c. 4 [Vernon's Ann. Civ. St. art. 1735a], which provides in part that:

"An Act providing that the Supreme Court and Courts of Civil Appeals of this State shall have original jurisdiction in the matter of issuing the Writ of Mandamus, or any other mandatory or compulsory Writ or Process to compel the performance by any Chairman or member of any Executive Committee, or primary committee, or primary election officer of any party, of any duty imposed upon them, respectively, by the laws of this State, and making this Act cumulative of all other laws affecting its subject matter; and declaring an emergency.

"Be it enacted by the Legislature of the State of Texas:

"Section 1. The Supreme Court, or any Court of Civil Appeals, shall have power, or authority, or jurisdiction, to issue the Writ of Mandamus, or any other mandatory or compulsory Writ or Process, against any Chairman or member of any Executive Committee, or primary committee, or primary election officer, of any political party, to compel the performance, in accordance with the laws of this State, of any duty imposed upon them, respectively, by law. If it appear to the Court that delay will not prove injurious to either party, and that justice may be subserved thereby, it may cause notice of the application for any such Writ or Process, and of the time fixed for considering the same, to be given the opposite party, in such manner as it may direct. This Act shall be cumulative of all other laws affecting its subject matter. Provided that any petition for any such writ

pertaining to a nomination for any state office presented to any court of civil appeals shall be presented to the court of Civil Appeals of the district in which the Chairman of the State Executive Committee of the party affected, resides, and any petition for any such writ pertaining to a nomination for any District or County or precinct office shall be presented to a court of Civil Appeals in which such district or a portion thereof or such county or precincts is located."

The constitutionality of this act has been expressly affirmed in the recent opinion of the Supreme Court in the case of Love, Relator, v. D. W. Wilcox et al., composing the Democratic Executive Committee for the State of Texas. See 28 S.W.(2d) 515.

█ It is insisted that the positions to which the relators aspire are not offices within the meaning of the act quoted, but we do not feel prepared to agree with this construction of the law. Article 3113, Rev. Statutes of 1925, relating to nominations, provides that:

"Any person desiring his name to appear on the official ballot for the general primary, as a candidate for the nomination for any office to be filled by the qualified voters of a county or a portion thereof, or for county chairman, shall file with the county chairman of the county of his residence, not later than Saturday before the third Monday in June preceding such primary, a written request for his name to be printed on such official ballot as a candidate for the nomination or position named therein, giving his occupation and post-office address, giving street and number of his residence, if within a city or town, such request to be signed and acknowledged by him before some officer authorized to take acknowledgment to deeds. Such request similarly signed and acknowledged by any twenty-five qualified voters resident in the county may be filed on or before said date, requesting that the name of any person named therein may be placed on the official ballot as a candidate for any county or precinct office or chairmanship, with like effect as if such request was filed by the person named as a candidate therein; which request shall be endorsed by the candidate named therein, showing his consent to such candidacy, if nominated."

Article 3118 of the statutes reads:

"There shall be for each political party required by this law to hold primary elections for nomination of its candidates, a county executive committee, to be composed of a county chairman, and one member from each election precinct in such county; the committeeman from such election precinct shall be chairman of his election precinct, and the said county chairman shall be elected on the general primary election day; the county chairman by the qualified voters of the whole

county, and the precinct chairman by the qualified voters of their respective election precincts. Said county and precinct chairman shall assume the duties of their respective offices on Saturday following the run-off primary immediately after the committee has declared the results of the run-off primary election. Said county chairman shall be ex-officio a member of the executive committee of all districts of which his county is a part, and the district committee thus formed shall elect its own chairman. Any vacancy in the office of chairman, county or precinct, or any member of such committee shall be filled by a majority vote of said executive committee. The list of election precinct chairmen and the county chairman so elected, shall be certified by the county convention to the county clerk, along with the other nominees of said party. If there are no requests filed for candidates for county and precinct chairman, a blank space shall be left on the ticket beneath the designation of such position."

It is thus seen that the positions of chairman of the Democratic Executive Committee of a county and precinct chairman are provided for, and the method of the election prescribed. · The right to hold the several positions named, and to exercise the powers conferred upon such committee, exists only in cases where candidates for such positions are nominated and elected by the qualified voters, and having been so designated by legislative act with prescribed duties, and the nomination and election of candidates to such positions having been regulated, we think the positions are offices within the meaning of the jurisdictional act quoted. At least the relators by the uncontradicted allegations of their petition come within the meaning of the terms of article 3113, hereinabove quoted. The language of that article confers upon them the right to file their applications for nomination, as it is alleged they have done, and by other articles relating to the subject it is made the duty of the executive committee to place upon the ticket the name of any person not ineligible for nomination to the office to which he aspires. By the language of the jurisdictional act quoted we are given power by writ of mandamus or by other mandatory writ or process to "compel the performance by any Chairman or member of any Executive Committee, or primary committee, or primary election officer of any party, of any duty imposed upon them, respectively, by the laws of this state."

■ We think we must also overrule the objection that there is a misjoinder of parties in this case. In 20 Corpus Juris, p. 223, § 285, it is said:

"It is a general rule that the court can acquire no jurisdiction by a single petition to contest the right of different persons to different offices. An exception to the general rule, however, has been made where several join in one petition and the rights of all the parties depend upon practically the same state of facts."

In the case of Kennison v. Du Plantis, 220 S. W. 118, by the Beaumont Court of Civil Appeals, it was held, quoting from the headnotes, that:

"There is no misjoinder of causes of action, nor of parties, where, in proceedings to contest an election of two school trustees, two defeated candidates are contestants against the two successful ones; all parties interested adversely to the contestees being proper parties plaintiff."

The above case was referred to with approval in the case of Keyker v. Watson, 291 S. W. 957, by the Amarillo Court of Civil Appeals. See also Miller v. Coffee, 17 S. W. (2d) 1100; Wells v. Commissioners' Court, (Tex. Civ. App.) 195 S. W. 608.

■ As to the objection made that the relator Ogle had not indorsed the request of the 40 qualified voters that his name be placed upon the ballot as required by article 3113, we think it sufficient to say that the evident purpose of that requirement is that the committee may be informed that the candidate, if elected, will accept the position named, and the relator Ogle, having joined in the application for the writ of mandamus, will, we think, be a sufficient assurance that he will serve if elected, and hence that the absence of such indorsement by him will not justify us in denying the prayer of the petition if he is otherwise entitled to the relief sought before this court.

■ The further material contentions of the respondents must be disposed of, we think, under the rules of the Supreme Court in the case of Love v. Wilcox, supra. It has been suggested that the terms of the Senate bill conferring jurisdiction upon the Supreme Court and Courts of Civil Appeals is concurrent, and ·that no appeal having been provided in such cases, our opinion has the same element of authority and finality as that of the Supreme Court, and hence that the opinion in the Love Case should not be followed, and that the conclusion of the matter should be determined by the authority conferred upon and inherent in the executive committees of the party. The Supreme Court, however, is the agency provided by our Constitution with the general power to construe statutes and constitutional provisions, and its opinions in any event are entitled to the fullest respect and observances by all inferior agencies of the judicial department. Moreover, conflicts in the decisions of a Court of Civil Appeals and of the Supreme Court, where authorized under any construction of the law, would certainly be productive of confusion and uncertainties in the administration of ·our laws. We therefore feel it

our duty to apply without hesitation or quibbling the law as so fully and carefully presented in the opinion of Judge Greenwood. In that case it was distinctly held that: "When the uncontradicted facts show that a relator has the right to exact performance by public functionaries of duties imposed on them by law, his appropriate remedy is the writ of mandamus. No questions could arise of wider public interest or of graver importance to the state than those involving abridgment of rights of citizens to participate in government through the selection of those who may become public officials by means of party nominations. A speedy, final determination of such questions is at times possible only through the exercise of jurisdiction elsewhere than in the district court." It was further said, quoting from an opinion by Chief Justice Marshall, that: "Where a specific duty is assigned by law, and individual rights depend upon the performance of that duty, * * * the question whether a right has vested or not, is, in its nature, judicial, and must be tried by the judicial authority."

The court cited section 2 of article 1 of our Constitution, conferring the right upon the people to "alter, reform or abolish their government in such manner as they may think expedient," and held that "the primary laws of this state are based upon a recognition of political parties as agencies of the people for the exercise of the powers thus reserved to them by the Constitution."

Love had been a member of the Democratic Party and acted with it for many years, except that he voted for the Republican nominee for Governor of Texas in 1924 and for the Republican electors in 1928, and actively participated in the 1928 campaign to defeat the Democratic presidential electors, and his application was for a writ of mandamus to compel the State Democratic Committee to cause his name to be printed upon the official ballots, which they had refused to do, on the ground of Love's want of regularity in supporting the nominees of his party. It appeared, however, that he had taken the test required by article 3110 of the primary election law, and the court, after reciting the history of the primary election laws, as shown in the journals of the Legislature and in the various articles of the statutes relating to the subject, held that Love's want of party regularity did not authorize the committee to deny his application to have his name on the primary ticket as a candidate for Governor. The court cited amended article 3107, Rev. Civ. Statutes, as shown in the Acts of 1927, 1st Called Sess., c. 67, p. 193 (Vernon's Ann. Civ. St. art. 3107), which reads in part as follows:

"No person shall ever be denied the right to participate in a primary in this State because of former political views or affiliations."

The court further said:

"This statute was never meant to authorize the committee by its action to override or change the uniform test prescribed by the state itself in the test-pledge statute. The committee is utterly wanting in authority to subtract from or add to the words of the statutory pledge, which is to be taken in the light of the definition of its terms by this court. The relator fully complies with the law's requirements in so far as promises about his future political action is concerned when he offers to take 'the test prescribed by article 3110, Revised Civil Statutes, and to comply with the pledge contained therein to the utmost of conscience and good faith.'

"The power to pass on the sincerity of the candidate's pledge and to indorse or condemn his past party record is to be exercised by the party voters. The statutes jealously guard the voters' power in denying power to the party committees. It was correctly ruled by the Attorney General, through Mr. Dumas, in 1916: 'If proper application is made the committee should place the name of the candidate on the ballot and the members of the party—the voters themselves—would be the best judges of his fidelity to the party and make that decision at the polls.' The ruling was repeated through Assistant Attorney General Keeling when he said: 'The law, for reasons which seem to the writer to be obvious, declines to repose in any committee the ultimate right to pass upon a candidate's democracy. The right is inherent in the sovereign voters of such political party to determine that question.' Atty. General's Reports, 1914–1916, at pages 200 and 204."

In conclusion we think it must be said that the only objections to the appearance of the names of the relators upon the coming nominating primary ticket is that in the election of 1928 they supported the Republican nominee for President. In other respects, they seem to comply with all necessary regulations, and we conclude that for the reasons heretofore given and under the rulings of our Supreme Court in the case of Love v. Wilcox et al, the relators in the case before us are entitled to have their names placed upon the nominating ticket as requested by them, by complying with the requirements of article 3116 of the statutes relating to the payment by them severally of his proportionate part of the expenses for holding the primary election as fixed by the primary committee named in article 3115; and the Democratic Committee of Wichita County, Tex., is hereby directed and commanded to proceed in accordance with this opinion and other provisions of the election law.

In view of the fact, however, that the relators all joined in the request to have their names placed upon the nominating ticket, and of the further fact that the request of

the relator Ogle was not indorsed upon the request in his behalf, the costs of the present proceedings will be taxed against the relators.

DUNKLIN, J., absent and not sitting.