John LELAND, D.D.S., Petitioner,

v.

George C. BRANDAL and Ruth
L. Brandal, Respondents.

No. 06–1028.

Supreme Court of Texas.

Argued Nov. 14, 2007.

Decided June 13, 2008.

David Stephenson, Kathryn A. Stephens, Clemens & Spencer, P.C., San Antonio, TX, for Petitioner.

Phil Watkins, Charles Anthony Shattles, Beth W. Squires, Law Office of Beth Squires, San Antonio, TX, for Respondents.

Justice O'NEILL delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice HECHT, Justice WAINWRIGHT, Justice MEDINA, Justice GREEN, Justice JOHNSON, and Justice WILLETT joined.

In this health care liability claim, we must decide whether a plaintiff may be afforded a thirty-day extension to cure an expert report after a trial court's ruling that the report is adequate is reversed on appeal. *See* Tex. Civ. Prac. & Rem.Code § 74.351(c). We hold that when elements of a timely filed expert report are found deficient, either by the trial court or on appeal, one thirty-day extension to cure the report may be granted. Accordingly, we affirm the court of appeals' judgment remanding the case to the trial court to consider whether to grant a thirty-day extension.

## I. Background

George Brandal was a patient of Dr. John Leland, a dentist, for the purpose of obtaining dentures. On April 10, 2003, Leland extracted three of Brandal's teeth. One week later, Brandal returned to Leland's office for a post-operative consultation. Brandal alleges that Leland instructed him at that consultation to stop taking his anticoagulant medication, which he had been taking since 1994. Brandal followed those instructions, and on April 28th, Leland extracted another nine of Brandal's teeth. Eighteen hours later, Brandal had an ischemic stroke that left him paralyzed and unable to speak. Brandal and his wife, Ruth, brought this health care liability claim alleging that Leland negligently instructed Brandal to stop taking his anticoagulant medication, causing Brandal's stroke.

Pursuant to section 74.351(a) of the Civil Practice and Remedies Code, the Brandals served Leland with expert reports within 120 days of filing their suit. Leland filed objections to the reports' adequacy and, before the trial court hearing but still within 120 days after filing suit, the Brandals supplemented their reports. Leland moved to strike the supplemented reports, challenged their adequacy, and requested that the case be dismissed with prejudice. The trial court considered the Brandals' supplemented expert reports to be timely and adequate under section 74.351, and denied Leland's motion. Leland filed an interlocutory appeal and the court of appeals reversed, holding that one of the Brandals' expert reports was deficient for failure to adequately articulate how the expert was qualified to render an opinion on causation. 217 S.W.3d 60, 63. The court of appeals further held that the trial court had discretion, on remand, to allow a thirty-day extension under section 74.351(c). *Id.* at 64–65.

The Brandals do not appeal the deficiency ruling. Rather, Leland brought this appeal contending the Brandals' supplemented reports were not timely filed and that the statute does not permit a thirty-day extension when the court of appeals, as opposed to the trial court, determines that the report is deficient. We disagree with both points.[1]

---

1. We have jurisdiction over this interlocutory appeal because the court of appeals' justices disagree over whether the plain language of the statute permits a thirty-day extension when the court of appeals finds an expert report to be deficient. Tex. Gov't Code § 22.001(a)(1); *see Travis County v. Pelzel & Assoc., Inc.,* 77 S.W.3d 246, 248 n. 2 (Tex. 2002) (finding jurisdiction based on a concurring opinion at the court of appeals).

## II. Statutory Filing Period

 The version of section 74.351(a) applicable to the Brandals' claim provides: (a) In a health care liability claim, a claimant shall, not later than the 120th day after the date the claim was filed, serve on each party or the party's attorney one or more expert reports, with a curriculum vitae of each expert listed in the report for each physician or health care provider against whom a liability claim is asserted.

Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, 2003 Tex. Gen. Laws 847, 875 (amended 2005) (current version at TEX. CIV. PRAC. & REM.CODE § 74.351(a)).[2] According to Leland, the 120–day deadline to file expert reports is triggered when the plaintiff files notice of a claim under section 74.051, which requires a health care liability plaintiff to give each provider against whom a claim will be made at least sixty days written notice before filing suit. TEX. CIV. PRAC. & REM.CODE § 74.051(a). Calculating from the date he initially received notice of the Brandals' claim, Leland contends the Brandals' supplemented reports were not served within the 120–day period and the trial court erred in considering them.

 In construing a statute, our objective is to determine and give effect to the Legislature's intent. *Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527 (Tex.2000). We look first to the statute's language to determine that intent, as we consider it "a fair assumption that the Legislature tries to say what it means, and therefore the words it chooses should be the surest guide to legislative intent." *Fitzgerald v. Advanced Spine Fixation Sys., Inc.,* 996 S.W.2d 864, 866 (Tex.1999).

If the statute's language is unambiguous, its plain meaning will prevail. *McIntyre v. Ramirez,* 109 S.W.3d 741, 745 (Tex.2003).

 We believe the unambiguous plain meaning of "the date the claim was filed" is the date the plaintiff "filed" his health care liability claim in court and not, as Leland contends, the date the provider received notice that a claim *would be* filed. Leland argues that his interpretation is supported by a later amendment to the statute. In 2005, the Legislature changed the phrase "the date the claim was filed" to "the date the original petition was filed." Act of May 18, 2005, 79th Leg., R. S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590. Because the amended version refers to "the original petition," which clearly pinpoints the date the suit was filed in court, Leland reasons the earlier language must mean something different. However, we see nothing in the slight change in the statute's language to indicate that a different meaning was intended. *See Dick v. Kazen,* 156 Tex. 122, 292 S.W.2d 913, 915–16 (1956) (determining that the Legislature did not intend to alter a statute's meaning when it replaced "all candidates for each nomination" with "all candidates for all offices"). There is nothing in the text of the statute to indicate that "the date the claim was filed" means "the date the provider received notice of the claim." Because the Brandals served their supplemented expert reports within 120 days of filing suit, we conclude they were timely under the statute.

## III. Thirty–Day Extension

The expert reports that must be filed under section 74.351(a) are meant to serve

---

**2.** All references to section 74.351 are to the version applicable in this case. The only difference between the version applicable here and the current statute is the replacement of "the date the claim was filed" with "the date the original petition was filed" in section 74.351(a). Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 1, 2005 Tex. Gen. Laws 1590.

two purposes: (1) to inform the defendant of the specific conduct the claimant is questioning, and (2) to "provide a basis for the trial court to conclude that the claims have merit." *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 879 (Tex.2001). In order to sustain the suit, the report or reports must be authored by an expert, as defined by subsection (r)(5), and contain the expert's opinion with regard to the standard of care, the manner in which the health care provider failed to meet that standard, and the causal relationship between that failure and the plaintiff's injury. TEX. CIV. PRAC. & REM. CODE § 74.351(r)(5)-(6). Each defendant whose conduct is implicated in a report may challenge its sufficiency and must do so within twenty-one days of the report being served. *Id.* § 74.351(a). If the court agrees that the challenged report is deficient, the court has the discretion on its own to grant one thirty-day extension to allow the plaintiff an opportunity to cure the deficiency. *Id.* § 74.351(c). If the court determines that the report is adequate, the defendant may challenge that ruling by interlocutory appeal. *Id.* § 51.014(a)(9); *Lewis v. Funderburk,* 253 S.W.3d 204, 207 (Tex.2008).

█ In this case, the court of appeals found the Brandals' report deficient and, as has every court that has expressly addressed the issue,[3] remanded the case to the trial court to decide whether to grant the Brandals a thirty-day extension to cure the deficiency. 217 S.W.3d at 64–65. We agree with the court of appeals that section 74.351's plain language permits one thirty-day extension when the court of ap-

peals finds deficient a report that the trial court considered adequate.

Subsection 74.351(c), in relevant part, provides:

(c) If an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30–day extension to the claimant in order to cure the deficiency.

TEX. CIV. PRAC. & REM.CODE § 74.351(c). As Leland and the dissent read the statute, a thirty-day extension is only permitted if the *trial court* determines that the report is deficient. We see nothing in the statute's text to support such an interpretation. Rather, the provision states that one thirty-day extension may be granted when "elements of the report are found deficient," and does not confine that review to a particular court. Here, the court of appeals "found deficient" an element of one of the Brandals' two expert reports, exercising the power of review the Legislature granted in section 51.014(a). The statute does not allow for an extension unless, and until, elements of a report are found deficient, and that did not occur in this case until the court of appeals so held. Leland's interpretation would require us to read additional words into the statute, namely, "elements of the report are found deficient *by the trial court*," which we decline to do. *See Lee v. City of Houston,* 807 S.W.2d 290, 294–95 (Tex.1991) (explaining that a court may not judicially amend a statute by adding words). The *sua sponte* discretion vested in "the court" to grant a thirty-day extension is similarly broad, and

---

**3.** *See Austin Heart, P.A. v. Webb,* 228 S.W.3d 276, 284–85 (Tex.App.-Austin 2007, no pet.); *Murphy v. Mendoza,* 234 S.W.3d 23, 30 (Tex. App.-El Paso 2007, no pet.); *Valley Baptist Med. Ctr. v. Gonzales,* No. 13–06–00371–CV, 2007 Tex.App. LEXIS 996, at *11 (Tex.App.-Corpus Christi Feb. 8, 2007, no pet.); *Longino*

*v. Crosswhite,* 183 S.W.3d 913, 918 n. 2 (Tex. App.-Texarkana 2006, no pet.); *Wells v. Ashmore,* 202 S.W.3d 465, 468 n. 1 (Tex.App.-Amarillo 2006, no pet.); *Lo v. Higgs,* No. 09–05–00528–CV, 2006 WL 800823, at *1, 2006 Tex.App. LEXIS 2505, at *9, *10 (Tex.App.-Beaumont Mar. 30, 2006, no pet.).

the court of appeals did not err in exercising that discretion by remanding consideration of the extension issue to the trial court.

Leland further argues that, because the Brandals already took the opportunity to supplement their reports in response to Leland's objections, the purpose of subsection (c) was met and the Brandals are not entitled to an additional extension. Again, we disagree. The plain language of subsection (c) provides for an extension to cure when elements of a report have been *found* deficient. Tex. Civ. Prac. & Rem. Code § 74.351(c). Section 74.351 does not state or imply that a plaintiff forfeits the possibility of obtaining a thirty-day extension to cure by timely responding to a defendant's specific objections before the court has an opportunity to rule on a defendant's motion to dismiss. In this case, the Brandals timely supplemented their reports and the trial court did not err in considering them.

The dissent contends our interpretation of the statute is not warranted by its text, arguing first that section 74.351 does not discuss interlocutory appeals and section 51.014, which does, is located in a different code. However, the text of the statutes and the circumstances of their passage indicate otherwise: sections 51.014(9) and (10) explicitly reference section 74.351, and both statutes were passed at the same time as part of the same tort-reform bill. Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 1.03, 10.01, 2003 Tex. Gen. Laws 847, 849, 875. Presumably, the Legislature was aware of this and intended the provisions to be interpreted together. *See Acker v. Tex. Water Comm'n,* 790 S.W.2d 299, 301 (Tex.1990) ("A statute is presumed to have been enacted by the [L]egislature with complete knowledge of the existing law and with reference to it."). The dissent further contends our analysis

alters the statutory structure by giving trial courts a "third choice" of "deny[ing] the motion altogether, and then grant[ing] an extension years later if reversed on appeal." 257 S.W.3d at 210. But the options the dissent posits presuppose a report's inadequacy. According to the dissent's view, if the trial court considers a report to be adequate and is later judged to be wrong, the plaintiff has no recourse and is denied the opportunity to cure that the statute clearly contemplates. Finally, the dissent complains that our holding circumvents the statute's purpose by potentially affording a plaintiff two time-consuming appeals. It is true that one of the statutory purposes was to "reduce excessive frequency and severity of health care liability claims," Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.11(b)(1), 2003 Tex. Gen. Laws 847, 884, but the Legislature only sought to "do so in a manner that will not unduly restrict a claimant's rights," Act of June 2, 2003, 78th Leg., R. S., ch. 204, § 10.11(b)(3), 2003 Tex. Gen. Laws 847, 884. In enacting section 74.351, the Legislature struck a careful balance between eradicating frivolous claims and preserving meritorious ones; the dissent would credit only one side of the equation, contrary to the statutory language.

## IV. Conclusion

We agree with the court of appeals' determination that it has the discretion to remand the case for consideration of a thirty-day extension to cure the deficiency that the court of appeals found in the Brandals' expert report. Because the merits of the Brandals' case are not before us, we decline to discuss them. Accordingly, we affirm the court of appeals' judgment.

Justice BRISTER filed a dissenting opinion.

Justice BRISTER, dissenting.

I agree that plaintiffs have 120 days after filing suit to serve expert reports. I also agree voluntary supplementation does not bar them from obtaining a 30–day extension. But I disagree that expert reports found deficient on appeal should be remanded for an extension to start the process all over again. The Legislature mandated that health-care claims must be dismissed within the first 4 or 5 months unless supported by an expert report; today's decision extends that deadline to 4 or 5 years. As this completely frustrates the Legislature's intent, I respectfully dissent.

Section 74.351 of the Civil Practice and Remedies Code requires health-care claimants to provide supporting expert reports early in the litigation. Subsection (a) says the reports are due 120 days after filing. Subsection (b) says the trial court must dismiss the case if no report is served by then. But subsection (b) is subject to subsection (c), which allows the trial court to grant a single 30–day extension if it finds a report deficient:

> If an expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30–day extension to the claimant in order to cure the deficiency.

How this was intended to work is plain from the statute's structure:

> (a) the plaintiff files a report,
>
> (b) if it the trial court finds the report deficient it must dismiss the case or
>
> (c) grant an extension.

But the Court changes that structure (and radically extends the timetables) by inserting in this sequence a reversal on interlocutory appeal. While the statute does not expressly say which court the Legislature had in mind when addressing reports that "are found deficient," for four reasons it could not have been an appellate court after an interlocutory appeal.

First, section 74.351 says nothing about interlocutory appeals or appellate courts. As "the court" granting an extension in 74.351(c) can only be the trial court (as the Court in effect concedes by remanding to that court to decide this matter) construing the section to include the court of appeals requires us to change courts *in mid-sentence*. The only court mentioned anywhere in the subchapter on expert reports is the trial court. Interlocutory appeal is provided by section 51.014 of the Civil Practice and Remedies Code—a different statute in a different code. While section 51.014 does refer to section 74.351, so do other statutes like section 160.053 of the Occupations Code,[1] and surely nobody believes extensions are available if the Texas Medical Board finds a report deficient. So when section 74.351 addresses extensions after reports "are found deficient," there is no reason to presume it refers to any court other than the only one referenced in the same sentence—the trial court.

Second, the 30–day extension in section 74.351 is usually, as we recently held, "inseparable" from a trial court's denial of a physician's motion to dismiss.[2] The statute requires neither written motion nor even oral request for an extension; it simply allows trial judges to grant extensions *sua sponte* if they find a report deficient. Thus, a trial judge confronted with a deficient report has two choices: (1) dismiss or

---

1. *See* Tex. Occ.Code § 160.053 (requiring health care insurers to forward section 74.351 reports to Texas Medical Board).

2. *Ogletree v. Matthews*, —— S.W.3d ——, —— (Tex.2007) ("[T]he actions denying the motion to dismiss and granting an extension are inseparable.").

(2) grant a short extension. Today's decision creates a third choice: (3) deny the motion altogether, and then grant an extension years later if reversed on appeal. This looks a lot like the waste and delay the Legislature intended to stop.

Third, a substantial part of the state's appellate resources are already being expended reviewing preliminary expert reports; today's decision will likely double that load. The Court remands so the trial court can consider granting an extension, but that is a foregone conclusion—any self-respecting trial judge who found the first report sufficient would feel compelled on remand to find the same report was a good faith effort. New reports will then be filed, challenged,[3] and appealed again no matter what the trial judge rules. One interlocutory appeal is enough; two on preliminary matters like this are too many.

Fourth, the Court's construction of section 74.351 effectively frustrates its purpose. There is no question what that purpose was: to cutoff prolonged litigation if no qualified expert could support the plaintiff's case.[4] The Legislature repeatedly found that traditional rules of litigation—like waiting until trial to see if a plaintiff could produce an expert—had created a crisis in the cost and availability of medical care in Texas.[5] Any ambiguity in whether 74.351 allows post-appeal extensions must be construed in favor of this intent.[6]

But the Court does the opposite. Even though three years have passed since the Brandals filed this case, the Court says they can get another 30 days to finally get their reports right. That, as just noted, will likely lead to another round of appeals. So instead of getting a sufficient report or dismissal within 4 or 5 months as the Legislature intended, health-care providers may not get what they deserve for 4 or 5 years.

If the Brandals were surprised that the court of appeals found their reports deficient, they should not have been. They claimed their dentist, Dr. Leland, caused George Brandal's stroke by advising him to discontinue anticlotting medications before extraction of multiple teeth. Dr. Leland specifically challenged their expert report on causation because their expert was an anesthesiologist who stated no qualifications regarding heart medications or strokes. Recognizing the omission, the Brandals supplemented his report, but the only information added about his qualifications was the following:

Anesthesiologists are frequently asked to care for patients similar to Mr. Brandal. In my years of practice of Anesthesiology I have taken part in the care of scores of patients like Mr. Brandal who are at risk for stroke or heart attacks and are taking these medicines. Many of them were having open heart operations with all of the problems of severe disease and bleeding. Thus I have had considerable work experience with these drugs and have great respect for their potency.

As the court of appeals correctly held, this is not enough. Everything in this paragraph could also be said about nurses,

---

3. For example, in addition to challenging the qualifications of the Brandals' expert, Dr. Leland raised five other challenges to their expert reports.

4. *In re McAllen Medical Ctr., Inc.*, —— S.W.3d ——, —— (Tex.2008).

5. *Id.* at ——.

6. TEX. GOV'T CODE § 311.023 ("In construing a statute, whether or not the statute is considered ambiguous on its face, a court may consider among other matters the: (1) object sought to be attained; . . . (5) consequences of a particular construction. . . . ").

who frequently care for patients at risk for stroke and surely have great respect for the related medications, but who undoubtedly are not qualified to opine on causation. We cannot presume all physicians are qualified to testify about what caused George Brandal's stroke;[7] the plaintiffs knew this was the objection but simply failed to answer it.

I share the Court's reluctance to dismiss claims like this when reports are found deficient only on appeal.[8] But of course there are many instances in which parties do not get a second chance after an appellate court dismisses their claims or defenses. In enacting section 74.351, the Legislature intended to favor the public interest over the private interests of particular plaintiffs.[9] Grace periods and extensions were concessions the Legislature made while trying to establish firm rules to stem a serious problem; continuing judicial reluctance to enforce those rules may eventually encourage the Legislature to grant no concessions at all.

---

7. *In re McAllen,* —— S.W.3d at —— (quoting *Broders v. Heise,* 924 S.W.2d 148, 152 (Tex. 1996)).

8. It is not true, as the Court asserts, that courts always remand for a possible extension after finding a report deficient. *See, e.g., CHCA Mainland, L.P. v. Burkhalter,* 227 S.W.3d 221, 228 (Tex.App.-Houston [1st Dist.], 2007, no pet.) (finding reports deficient and rendering judgment); *Methodist Healthcare Sys. of San Antonio, Ltd. v. Martinez-Partido,* 04–05–00868–CV, 2006 WL 1627844 (Tex.App.-San Antonio 2006, pet. granted) (same).

