In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-08-067 CV


____________________



BAPTIST HOSPITALS OF SOUTHEAST TEXAS d/b/a


MEMORIAL HERMANN BAPTIST BEAUMONT HOSPITAL, Appellant



V.



RICKEY CARTER, Appellee






On Appeal from the 136th District Court


Jefferson County, Texas


Trial Cause No. D-178,269






 MEMORANDUM OPINION


 This interlocutory appeal concerns the statutory adequacy of an expert's report under
standards that apply to health care liability claims. See Tex. Civ. Prac. & Rem. Code Ann.
§§ 51.014(a)(9), 74.351(b), 74.351(r)(6) (Vernon Supp. 2007). (1) In two issues, the health care
provider, Baptist Hospitals of Southeast Texas d/b/a Memorial Hermann Baptist Beaumont
Hospital ("Baptist"), contends the trial court erred in denying its motion challenging an
amended report's adequacy. We agree that the amended report did not adequately explain
the factual basis for the expert's causation opinion on how a surgeon's absent operative
report delayed the patient's diagnosis and treatment. Therefore, we reverse the trial court's
order and remand this cause for further proceedings consistent with this opinion.

I. Background

 Between August 2005 and February 2006, Rickey Carter had four surgeries related
to his gastrointestinal problems, two at Baptist and then two at St. Luke's Episcopal Medical
Center in Houston. Dr. Jerome Schrapps performed both surgeries at Baptist. In Carter's
first surgery on August 12, 2005, Dr. Schrapps resectioned the first portion of Carter's
duodenum and did a truncal vagotomy. On August 31, Dr. Schrapps performed Carter's
second surgery to explore for a leak related to the prior surgery, but none was found. Carter
was discharged from Baptist in mid-September 2005 when "drainage from the surgical drains
decreased and this was interpreted as representing closure of the fistula." Later, at St.
Luke's, Carter underwent a third surgery "for drainage of the abscess, debridement of
necrotic pancreas and placement of a cholecystostomy tube." Finally, on February 3, 2006,
Carter had his fourth surgery in order to correct a pancreatic fistula.

 On December 5, 2006, Carter sued Dr. Schrapps, and alleged, among other omissions,
that Dr. Schrapps injured his pancreatic duct during the first surgery at Baptist. On August
1, 2007, Carter added Baptist as a defendant when he filed his Second Amended Petition. (2)
With respect to his claims against Baptist, Carter complained that Baptist (1) failed to ensure
that Dr. Schrapps filed an operative report regarding Carter's first surgery, (2) failed to
enforce its policy to require that physicians dictate and file operative reports, (3) failed to
require Dr. Schrapps to comply with its record-keeping policy, (4) failed to properly regulate
whether physicians complied with its policies, and (5) failed to have a policy and procedure
that required surgeons to timely dictate and file an operative report in the patient's medical
records.

 On November 5, 2007, Carter filed an expert report authored by Dr. James R. Macho,
a general surgeon, to support his claims against Baptist. See Tex. Civ. Prac. & Rem. Code
Ann. § 74.351(a) (Vernon Supp. 2007). Baptist objected to the sufficiency of Dr. Macho's 
report and asserted that it was conclusory regarding how Baptist's acts or omissions had
caused delays in Carter's treatment. Baptist further objected that Dr. Macho's report did not
demonstrate that he was qualified as an expert on administrative standards applicable to
hospitals.

 After conducting a hearing on Baptist's objections, the trial court gave Carter a thirty-day extension to cure his deficient expert report. See id. § 74.351(c) (Vernon Supp. 2007). 
At the conclusion of the hearing, the trial court stated: "I think Dr. Macho needs to explain
how if Dr. Schrapps had dictated, timely dictated [an operative report], [ ]how that would
have been significant to the following health care practitioners and what they would have
done that -- how that would have played up causation." With respect to Dr. Macho's
qualifications on the issue of hospital administrative standards, the trial court also stated:
"[H]e needs to specifically set forth with the standard of care why he was able to comment
that the standard of care would require some type of mandatory deadline for reports and
follow-up procedures."

 On December 12, 2007, Carter filed an amended expert report. In his amended report,
Dr. Macho noted that the operative report on Carter's first abdominal surgery was "dictated
approximately one year later" on July 24, 2006. Operative reports, according to Dr. Macho,
"aid in diagnosing the patient" by allowing other physicians involved in the patient's care "to
see what was done during the surgery and see if there were any complications during the
surgery." Dr. Macho then concluded: "The physicians consulting on Rickey Carter's case
and caring for Rickey Carter at Baptist Hospital Beaumont and at St. Luke's Hospital in
Houston did not have an operative report for Rickey Carter's first surgery because it was not
dictated and filed until approximately one year after the surgery."

 Dr. Macho's amended report, which contained his theory about how the absence of
the first operative report harmed Carter, stated: "It took several months for surgeons to
discover why Rickey Carter was having medical complications." After discovering the
problem, surgeons at St. Luke's performed a surgery "to drain Rickey Carter's [accessory]
pancreatic duct." According to Dr. Macho, 

 the operative report, when coupled with Rickey Carter's post surgical
symptoms, reveals that there was in all likelihood an injury to Rickey Carter's
pancreatic duct(s)[;] therefore, the surgeons at St. Luke's Hospital would have
been able to identify what was causing Rickey Carter's symptoms and perform
a definitive surgery to re-connect the [accessory] pancreatic duct much sooner
than actually occurred.


 With respect to the standard of care applicable to Baptist, Dr. Macho's amended report
stated:

 The standard of care also requires hospitals to have policies and procedures in
place, which are enforced, that require surgeons to dictate operative reports
immediately after surgery and have their reports filed in the hospital medical
records as soon as possible after the surgery. The standard of care further
requires hospitals to have policies and procedures, which are enforced, to
review the medical records of patients to insure that they are properly
completed within 30 days of a patient's discharge. Each of these standards of
care [was] breached when Baptist Hospital Beaumont failed to determine that
Dr. Schrapps had not dictated or filed his operative report for Rickey Carter's
first surgery until almost one year following the surgery. Each of these
standards of care [was] also breached when Baptist Hospital failed to make
sure that an operative report for Rickey Carter was dictated and filed by Dr.
Schrapps soon after the surgery. (3)

 Baptist reasserted its objections to Dr. Macho's amended report and again argued that 
the amended report inadequately explained how the alleged delays in Carter's treatment were
attributable to the absence of a report on the first surgery. Baptist also renewed its objection
that Dr. Macho's report did not demonstrate his qualifications to render opinions on the
standard of care hospitals follow on their record-monitoring practices.

 At the hearing on Baptist's objections to the amended report, Baptist introduced copies
of the operative reports on Carter's two surgeries at Baptist. (4) The operative report on the first
surgery reflects that it was dictated on July 24, 2006, or, approximately one year after the
surgery. The operative report on Carter's second surgery at Baptist reflects that it was
dictated and transcribed on September 5, 2005, and Dr. Macho's amended report does not
assert that the second operative report was unavailable to Carter's other physicians. The
operative report on Carter's second surgery shows that Dr. Schrapps was the surgeon. It also
contains information about the first surgery, including the nature of the first surgery, which
Dr. Schrapps indicates consisted of a "vagotomy antrectomy secondary to an ulcer in the
duodenum[.]" According to Dr. Schrapps's second surgical report, "it was [his] presumption
that the patient had either [an] anastomotic leak or an abscess." During Carter's second
surgery, Dr. Schrapps "inspected the area of the duodenal stump" and found "no evidence of
a leak in this area." The report from the second surgery also reflects that based upon Carter's
symptoms, Dr. Schrapps "felt that the diagnosis of an anastomotic leak was definitive and we
are proceeding with repair." During the second surgery, Dr. Schrapps reports that he saw "a
tremendous amount of inflammatory response around the gastrojejunostomy." (5)

 Therefore, Dr. Schrapps's four-page report about Carter's second surgery contains
information about Carter's first surgery and his post-surgical course. The report states that
in the first surgery, Dr. Schrapps noted an "ulcer in the duodenum at the junction of the first
and second portions which had eroded posteriorly into the pancreas." Thus, the second-surgery report indicates the involvement of Carter's pancreas in the first surgery.

 Following the hearing on the sufficiency of Dr. Macho's amended report, the trial court
denied Baptist's motion to dismiss without entering any findings of fact or conclusions of law.
On appeal, Baptist asserts that Dr. Macho's amended report is inadequate because it was
"built on a foundation of assumptions and speculation." See Tex. Civ. Prac. & Rem. Code
Ann. §§ 74.351(l), (r)(6) (Vernon Supp. 2007). Second, Baptist contends that Dr. Macho's
amended report does not sufficiently demonstrate that he is qualified to render opinions
concerning standards of care pertinent to medical record-keeping requirements.

II. Standards

 Generally, we review trial court rulings on motions to dismiss health care liability
claims to determine whether the court abused its discretion. See Bowie Mem'l Hosp. v.
Wright, 79 S.W.3d 48, 52 (Tex. 2002) (citing Am. Transitional Care Ctrs. of Tex., Inc. v.
Palacios, 46 S.W.3d 873, 878 (Tex. 2001)). "A trial court abuses its discretion if it acts in an
arbitrary or unreasonable manner without reference to any guiding rules or principles." 
Wright, 79 S.W.3d at 52. A trial court abuses its discretion if it fails to analyze or apply the
law correctly. Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992). 

 With respect to health care liability claims, the claimant must file an expert report that
provides a "fair summary" of the expert's opinions as of the date of the report. See Tex. Civ.
Prac. & Rem. Code Ann. § 74.351(r)(6). To constitute a good-faith effort, the expert's report
"must discuss the standard of care, breach, and causation with sufficient specificity to inform
the defendant of the conduct the plaintiff has called into question and to provide a basis for
the trial court to conclude that the claims have merit." Palacios, 46 S.W.3d at 875. A report
that merely states the expert's conclusions on the applicable standard of care, breach, and
causation "does not fulfill these two purposes." Id. at 879. Thus, an expert report that omits
any of the statutorily required elements does not qualify as a good-faith effort. Id. at 878-79.

 To be qualified to provide opinions in claims against hospitals, the expert must 
practice in a field that involves the same type of treatment that was delivered to the claimant
by the health care provider, have knowledge of the accepted standards of care for treatment,
and show he is qualified to offer an expert opinion regarding the accepted standards of care.
Tex. Civ. Prac. & Rem. Code Ann. § 74.402(b) (Vernon 2005). Under the Texas Rules of
Evidence, an expert must have knowledge, skill, experience, training, or education regarding
the specific issue before the court that would qualify the expert to give an opinion on that
particular subject. See Broders v. Heise, 924 S.W.2d 148, 153 (Tex. 1996); see also Tex. R.
Evid. 702.

 A court may grant one thirty-day extension to cure a deficient report. Tex. Civ. Prac.
& Rem. Code Ann. § 74.351(c); Leland v. Brandal, No. 06-1028, 2008 Tex. LEXIS 574, at
*1 (Tex. June 13, 2008). In this case, the trial court previously granted one extension to allow
Carter the time to cure his deficient expert report.


III. Analysis


 Concerning causation in this case, Dr. Macho's amended report provides his opinion
that

 the failure of Baptist Hospital to enforce their policies and procedures, as stated
above, contributed to the injuries sustained by Rickey Carter because such a
report would have led to the correct diagnosis of a pancreatic injury earlier (due
to it being stated in the operative report) and avoided the second unnecessary
operation for a suspected anastomotic leak. It would also have led to the
immediate transfer of Mr. Carter to St. Luke's Hospital for definitive care.

But, an opinion is not enough. As the Texas Supreme Court has held, to establish causation, 
a report must contain sufficient facts explaining the expert's conclusions and must show
causation beyond mere conjecture. See Wright, 79 S.W.3d at 52-53; see also Tex. Civ. Prac.
& Rem. Code Ann. § 74.351(r)(6).

 In this case, we conclude that Dr. Macho did not provide sufficient facts to sufficiently
explain how Baptist's alleged omissions caused delays in Carter's treatment. Instead, Dr.
Macho's amended report bases its causation analysis on several assumptions about Carter's 
treatment at Baptist and at St. Luke's that are inconsistent with the medical records placed in
evidence at the hearing. 

Treatment at Baptist 


 As to Carter's treatment at Baptist, the report's conclusion that Carter would not have
had the second surgery if Dr. Schrapps had timely caused a report on Carter's first surgery to
be included in his medical records relies on three main assumptions: a timely filed report
would have been available for other doctors to review prior to the second surgery; other
doctors would have intervened early in Carter's post-surgical treatment and provided him with
the surgery that ultimately corrected his problem; and Carter's surgeon for the second surgery,
without the benefit of a report from the first surgery, would have had insufficient knowledge
of the extent of Carter's first surgery. 

 With respect to avoiding the second surgery, we conclude that Dr. Macho does not
explain how a timely-filed report would have prevented the second surgery, and a fair
summary should do so. According to Dr. Macho's report, the proper standard of care requires
a hospital to insure that a patient's medical reports are completed "within 30 days of a
patient's discharge." Under this standard, because Carter was discharged in mid-September
2005, Baptist would not have discovered the absence of Dr. Schrapps's August 12 operative
report until mid-October 2005. Carter's second surgery occurred on August 31, more than a
month before the deadline under the standard that Dr. Macho states should apply. As a result,
it does not appear that the second surgery was caused by the breach of Dr. Macho's proposed
standard. His amended report fails to adequately explain how the missing operative report,
had it been timely filed, would have impacted any specific physician's recommendations
about Carter's second surgery. (6)

 Dr. Macho's amended report is also vague about how having the first operative report
would have prompted other physicians involved in Carter's care to have prevented the second
surgery. Dr. Macho's amended report indicates that Dr. Chennupati acted as Carter's
consulting gastroenterologist at Baptist and reveals that Dr. Macho reviewed a deposition that
Dr. Chennupati gave in connection with this suit. However, Dr. Macho does not state that Dr.
Chennupati testified that he would have prevented the second surgery had he read a written
report of the first surgery. Dr. Macho's amended report also does not mention by name other
physicians at Baptist who he believes might have prevented Carter's second surgery.

 Finally, Dr. Schrapps performed both the August 12 and the August 31 surgeries.
Because Dr. Schrapps would obviously have been aware that Carter's first surgery involved
his duodenum without the necessity of making a written report to himself, Dr. Macho's report
inadequately explains how an operative report on the first surgery would have altered Dr.
Schrapps's own decision to perform the second surgery. In conclusion, Dr. Macho's report
contains insufficient facts to adequately explain how the second surgery would have been
avoided had a written report of the first surgery been filed within the deadlines he has
proposed.





Treatment at St. Luke's 


 Dr. Macho's conclusion that Carter's condition would have been diagnosed more
quickly at St. Luke's if the first operative report had been part of his records also rests on the
basic assumption that Carter's doctors at St. Luke's could only have obtained the necessary
information from a written, first-surgery operative report. But, as we have explained, the
second operative report contains pertinent information about the first surgery. The second
operative report, which no one asserts was missing from Carter's medical records, states that
Carter "underwent a difficult vagotomy antrectomy secondary to an ulcer in the duodenum
at the junction of the first and second portions which had eroded posteriorly into the
pancreas." Thus, the record before the trial court reflected that Carter's second operative
report was timely under Dr. Macho's proposed standards and that it showed that his first
surgery involved the upper part of his duodenum. Further, Dr. Macho's report does not assert
that the second report inadequately explained the first surgery.

 Dr. Macho's amended report even implicitly recognizes that information about the
surgery, as opposed to a report about the surgery, could allow a physician to consider the 
likely existence of Carter's pancreas injury. For instance, Dr. Macho's amended report
explains that knowing that the first portion of the duodenum had been excised during the first
surgery would allow any reasonably prudent surgeon or gastroenterologist to recognize the
danger of "a high likelihood of causing injury to the pancreatic duct(s)." While a report from
the first surgery would have reflected that a part of Carter's duodenum had been removed, Dr.
Macho's report does not state that this information was otherwise unavailable to other
physicians from Carter's other records.

 We conclude that Dr. Macho's report does not sufficiently explain how not having a
report on the first surgery delayed Carter's treatment and resulted in his injury. We hold that
Dr. Macho's amended report lacks a sufficient explanation of facts showing that the
information about Carter from other medical records, from his symptoms, and from his history 
did not provide sufficient information to allow his subsequent physicians to properly treat
him. As a result, Dr. Macho's opinions in his amended report remained conclusory. We
sustain issue one. (7) 

 Accordingly, we reverse the trial court's order denying Baptist's motion to dismiss and
remand the case to the trial court for further proceedings consistent with this opinion. See 
Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b).

 REVERSED AND REMANDED.


 ____________________________

 HOLLIS HORTON

 Justice


Submitted on April 28, 2008

Opinion Delivered July 31, 2008

Before McKeithen, C.J., Gaultney and Horton, JJ.


DISSENTING OPINION



 I respectfully dissent. Macho's report is neither conclusory nor speculative. The report
adequately states the standard of care regarding post-operative reports, how Baptist allegedly
breached the standard of care, and how Baptist's alleged breach of the standard of care caused
Carter's injuries. See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (Vernon Supp.
2007). The report explains that Baptist's alleged breach of the standard of care deprived
Carter's treating physicians of important information concerning the full extent of Carter's
initial surgery and the complications during that surgery, and that this alleged breach delayed
the discovery of the true cause of Carter's post-operative symptoms and necessitated multiple
subsequent surgeries. The report discusses the standard of care, breach, and causation with
sufficient specificity to inform Baptist of the conduct Carter has called into question and to
provide a basis for the trial court to conclude that Carter's claims have merit. See Am.
Transitional Care Ctrs. of Tex., Inc. v. Palacios, 46 S.W.3d 873, 875 (Tex. 2001). In
addition, the report explained the factual basis for Macho's statements and linked his
conclusions to the facts. (8) See Bowie Mem'l Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002). 
I do not believe the trial court abused its discretion by overruling Baptist's motion to dismiss.


 ______________________________

 STEVE McKEITHEN

 Chief Justice


Dissent Delivered 

July 31, 2008
1. "'Expert report' means a written report by an expert that provides a fair summary
of the expert's opinions as of the date of the report regarding applicable standards of care,
the manner in which the care rendered by the physician or health care provider failed to
meet the standards, and the causal relationship between that failure and the injury, harm,
or damages claimed." Tex. Civ. Prac. & Rem. Code Ann. § 74.351(r)(6) (Vernon Supp.
2007).
2. In addition to Dr. Schrapps, the Second Amended Petition also named Dr. Schrapps' 
medical group, Southeast Texas Surgical Associates, P.A., and Carter's gastroenterologist,
Dr. Raja Chennupati, as defendants.
3. Dr. Macho's report does not indicate that he reviewed Baptist's policies and
procedures. However, given our resolution of the appeal based on issue one, we do not
address whether Dr. Macho's failure to demonstrate a familiarity with Baptist's policies
made him unqualified to offer opinions on Baptist's record keeping practices. See Tex. Civ.
Prac. & Rem. Code Ann. § 74.402 (b)(2) (Vernon 2005).
4. Carter asserts that the trial judge was limited to the four corners of Dr. Macho's
report in assessing whether it constituted a fair summary of his opinions. See Bowie Mem'l
Hosp. v. Wright, 79 S.W.3d 48, 52 (Tex. 2002); Am. Transitional Care Ctrs. of Tex., Inc. v.
Palacios, 46 S.W.3d 873, 878 (Tex. 2001). Baptist, in contrast, contends that the records the
expert acknowledges he reviewed are relevant to a court's determining whether the report
adequately relates the facts to the expert's opinion about causation.


 In general, the records that an expert reviewed could be relevant to a court's
determination of whether the report presents a fair summary of the factual basis of the
expert's opinion. While a court cannot go outside the expert's report in order to supply
information that is statutorily required to be within it, the challenge in this case addresses
whether the opinions in the expert's report are supported by facts reflected in the medical
records the expert has relied upon to render a report. See Wright, 79 S.W.3d at 53 ( "[T]he
report must include the required information within its four corners.").


 While Dr. Macho's report reflects that he reviewed several of Carter's medical
records, only two of the records he reviewed were presented to the trial court as part of
Baptist's adequacy challenge. Since appellate courts follow an abuse of discretion standard
in reviewing trial court decisions on health care liability claims, our review is necessarily
limited to the records presented to the trial court. See Palacios, 46 S.W.3d at 877; see also
Tex. R. App. P. 33.1(a) (providing that the record on appeal must show that the complaint
was made to the trial court with sufficient specificity to make the trial court aware of the
complaint). 
5. Webster's defines "gastrojejunostomy" as "the surgical formation of a passage
between the stomach and jejunum." Webster's Third New International Dictionary
939 (2002). The "jejunum" is "the first two fifths of the small intestine beyond the
duodenum usu. merging almost imperceptibly with the ileum though somewhat larger,
thicker-walled, and more vascular and having more numerous circular folds and fewer
Peyer's patches." Id. at 1213. 
6. Dr. Macho's amended report also fails to identify the date of Carter's first surgery
at St. Luke's. If this surgery also occurred prior to mid-October 2005, Dr. Macho would
have a similar problem linking causation to the absence of the first operative report. Without
addressing the relevant dates of the surgeries, compared to the deadlines he opines were
breached, Dr. Macho's amended report is inadequate to tie the absence of a report to a
change in the number of surgeries required to treat Carter's condition.
7. We need not address issue two, as resolving it would not result in greater relief. See
Tex. R. App. P. 47.1.
8. Baptist contends, and the majority asserts, that even if Baptist had in force the policy
endorsed by Macho, Carter would still have undergone the initial post-operative surgery
without the benefit of Schrapps's report. While this is true, the purpose of the expert report
required by Chapter 74 is to inform defendants of the conduct that plaintiffs allege caused
the complained-of injury, and to allow the trial court to determine in its discretion whether
the plaintiff's claims have merit. It is not the purpose of this report to marshal evidence
sufficient to withstand a motion for summary judgment. See Palacios, 46 S.W.3d at 875,
878-79.