The Honorable Joe Deshotel Chair, Committee on Business Industry Texas House of Representatives Post Office Box 2910 Austin, Texas 78768-2910
Re: Authority of Spindletop Mental Health Mental Retardation Services to sell or lease certain real property under House Bill 1759 and House Bill 1023 (RQ-0845-GA)
Dear Representative Deshotel:
You seek our opinion about the authority of Spindletop Mental Health Mental Retardation Services ("Spindletop") to sell or lease certain real property under two recent legislative enactments.[1]
House Bill 1759, enacted by the Eightieth Legislature, authorizes the transfer of a parcel of property from the Health and Human Services Commission, the Department of State Health Services, or the Department of Aging and Disability Services to Spindletop for nonmonetary consideration.[2] House Bill 1759 provides that the consideration for the land transfer
 shall be in the form of an agreement between the parties that requires Spindletop MHMR Services to use the property in a manner that primarily promotes a public purpose of the state by using the property to provide community-based mental health or mental retardation services.
House Bill 1759, supra note 2, § 1(c), at 3589. House Bill 1023, enacted by the Eighty-first Legislature, authorizes an agreement between the parties to be amended to expand the uses of the transferred property.[3]
Under such an amended agreement, Spindletop is to "use the property in a manner that primarily promotes a public purpose of the state by using the property to provide community-based physical health, health-related, mental health, or mental retardation services." *Page 2 
House Bill 1023, supra note 3, § 1(c), at 873. Both House Bill 1759 and House Bill 1023 provide that in the event the property is not used by Spindletop in the manner specified for more than 180 continuous days, ownership of the property automatically reverts to the state entity that transferred the property to Spindletop. See House Bill 1759, supra note 2, § 1(c), at 3589; House Bill 1023, supra note 3, § l(c-l), at 873.
You tell us that Spindletop operates facilities on only a portion of the property and "desires to either sell or execute a long-term lease of the [property] or a portion thereof and use the proceeds [therefrom] to provide community-based physical health, health-related, mental health, or mental retardation services." Request Letter at 2. You claim that the phrase "use the property" is ambiguous and could be construed to include authority to sell or lease the property and apply the proceeds to the specified services or it could be construed to require Spindletop to maintain possession of all portions of the property. Id. Thus, you ask whether Spindletop is authorized, under House Bill 1759 and House Bill 1023, to sell or to execute a long-term lease of a portion of the transferred property. See id. at 1,3. We consider Spindletop's authority under only House Bill 1759 and House Bill 1023.
The primary objective when construing a legislative enactment is to give effect to the Legislature's intent. Hernandez v. Ebrom,289 S. W.3d 316, 318 (Tex. 2009). We look first to the enactment's language in attempting to understand that intent. Leland v. Brandal,257 S.W.3d 204, 206 (Tex. 2008). We also consider the enactment as a whole rather than its isolated provisions. Helena Chem. Co. y. Wilkins, 47 S.W.3d 486,493 (Tex. 2001).
Though the term "use" by itself has numerous definitions and in some contexts could be construed broadly as you suggest, the mere fact that the term is capable of different meanings does not make the two bills ambiguous. See DeLeon v. State, 294 S.W.3d 742,747 (Tex. App.-Amarillo 2009, pet. ref d) ("A statute is ambiguous when it is capable of being understood by reasonably well-informed persons in two or more different senses."). For the following reasons, we believe House Bill 1759 and House Bill 1023 are capable of being understood by a reasonably well-informed person in only one sense — requiring Spindletop to maintain possession of the property for the specified purposes.
Neither bill contains an express grant of any authority to Spindletop, much less authority for Spindletop to partition or alienate part of the property by sale or lease. See House Bill 1759, supra note 2, § 1, at 3589-90; House Bill 1023, supra note 3, § 1, at 873. Considering the bills as a whole, the phrase about which you inquire is part of a broader statement about the state's public purpose being achieved by the transfer of the property. See House Bill 1759, supra note 2, § 1(c), at 3589 ("to use the property in a manner that primarily promotes a public purpose ofthe state by using the property" as specified) (emphasis added); accord
House Bill 1023, supranait 3, § 1(c), at 873. This legislative statement about the transfer of property serving the public purpose is more likely a statement designed to ensure that the transaction satisfies constitutional restraints on the state regarding public gifts or grants than it is an indirect grant of authority to Spindletop to alienate the property. See TEX. CONST, art. Ill, § 51 (prohibiting the granting of public money to an individual); see also Bailey v. State, 15 S.W.3d 622, 626
(Tex. App.-Dallas 2000, no pet.) (characterizing *Page 3 
section 51 as a provision intended to "prevent the application of public funds to private purposes" and explaining that "[a] transfer of funds for a public purpose, with a clear public benefit received in return, does not amount to a grant of public funds in violation of article III, section 51"). When the Legislature wants to authorize an entity to engage in such a realty transaction, it knows how to do so. See FMProps.Operating Co. v. City of Austin, 22 S.W.3d 868, 884-85 (Tex. 2000) (relying on the principle of statutory construction that the Legislature knows how to enact law effectuating its intent); cf. TEX. LOC. GOV'T CODE ANN. § 51.015(a) (Vernon 2008) (authorizing Type A general-law municipality to "take, hold, purchase, lease, grant, or convey property located in or outside the municipality"); TEX. WATERCODEANN. §§ 49.225
(Vernon 2008) (authorizing water district subject to chapter 49 to "lease any of its property, real or personal, to any person"), 49.226 (providing for sale or exchange of property by chapter 49 water district); TEX. GOV'T CODE ANN. § 496.0021(a) (Vernon Supp. 2009) (authorizing Board of Criminal Justice to "sell state-owned real property").
In addition, the very purpose of these two bills — to effectuate the transfer of property to Spindletop — indicates that the Legislature intended Spindletop to physically utilize the property for the named purposes rather than use the proceeds from a sale or lease of the property for the specified purposes. See House Bill 1759, supra note 2, § 1, at 3589; House Bill 1023, supra note 3, § 1, at 873; see also SENATE RESEARCH CENTER, BILL ANALYSIS, Tex. H.B. 1759, 80th Leg., R.S., at 1 (2007) (indicating that a prior bill led to the leasing of the former Beaumont State Center to Spindletop but that "Spindletop wanted to establish ownership but did not have the funds to purchase the former center"); HOUSE RESEARCH ORGANIZATION, BILL ANALYSIS, Tex. H.B. 1023, 81st Leg., R.S., at 2 (2009) (explaining that bill would expand allowable uses of the property transferred to Spindletop). In addition, the fact that the State has retained a reversionary interest to ensure that the property is utilized for the specified purposes by Spindletop supports the view that in adopting the two bills the Legislature did not contemplate sale or lease of the property by Spindletop. See House Bill 1759, supra
note 2, § 1, at 3589; House Bill 1023, supra note 3, § 1, at 873.
We conclude that under House Bill 1759 or House Bill 1023 Spindletop does not have authority to sell or lease a portion of the subject real property. *Page 4 
 SUMMARY Spindletop Mental Health and Mental Retardation Services does not, under House Bill 1759 or House Bill 1023, have authority to sell or lease the subject real property.
Very truly yours,
 GKEG ABBOTT Attorney/General of Texas
 ANDREW WEBER First Assistant Attorney General
 JONATHAN K. FRELS Deputy Attorney General for Legal Counsel
 NANCY S. FULLER Chair, Opinion Committee
 Charlotte M. Harper Assistant Attorney General, Opinion Committee
[1] See Request Letter at 1 (available at
http://www.texasattorneygeneral.gov).
[2] See Act of May 23, 2007, 80th Leg., R.S., ch. 1036, § 1, 2007 Tex. Gen. Laws 3589, 3589-90 [hereinafter House Bill 1759].
[3] See Act of May 21, 2009, 81st Leg., R.S., ch. 339, § 1,2009 Tex. Gen. Laws 873, 873 [hereinafter House Bill 1023]. *Page 1