November 4, 2010

The Honorable Scott Brumley
Potter County Attorney
500 South Fillmore Street, Room 303
Amarillo, Texas 79101-2548

Opinion No. GA-0814

Re: Whether revenue from the sale of prepaid phone cards in a county jail commissary should be credited to the sheriff or to the general fund of the county (RQ-0867-GA)

Dear Mr. Brumley:

You ask whether revenue from the sale of prepaid phone cards in a county jail commissary should be credited to the sheriff, as custodian of the commissary funds, or to the general fund of the county.[1]

As background, you explain that Potter County currently contracts with an outside company "for phone service to Potter County inmates. This phone service allows inmates to make calls to outside numbers, with the recipient of the calls paying the [outside company's] fee for the call." Request Letter at 1. You further explain that "[a]s a method of providing telephone access on a prepaid basis, the Potter County Sheriff is considering selling phone cards for this system to inmates through the jail commissary." *Id.* You tell us that, while "Potter County contracts with Global Tel* Link (GTL) for phone service for Potter County inmates," the selling of the prepaid phone cards in the commissary "*would be separate from the telephone service contract,*" and that the cards could be "purchased from whatever source by the Sheriff at a discount." *Id.* (emphasis added).

Generally, county officers are required to pay over all funds received, from whatever source derived, to the county treasurer. TEX. LOC. GOV'T CODE ANN. §§ 113.001, .003, .021 (West 2008). One exception to this rule provides that a sheriff is the sole custodian of jail commissary funds. *Id.* § 351.0415(b)(2) (West 2005). In 1989, the Legislature enacted an early version of section 351.0415 of the Local Government Code, which authorizes a sheriff, or his designee, to operate, or to contract for the operation of, "a commissary for the use of the prisoners committed to the county jail." Act of May 28, 1989, 71st Leg., R.S., ch. 980, § 1, sec. 351.0415, 1989 Tex. Gen. Laws 4056, 4056. Proceeds from the sale of commissary items are to be used solely for the benefit of county jail

---

[1]Request Letter at 1 (*available at* http://www.texasattorneygeneral.gov).

inmates.[2] Section 351.0415 also provides that "[a] commissioners court may not use commissary proceeds to fund the budgetary operating expenses of a county jail." TEX. LOC. GOV'T CODE ANN. § 351.0415(g) (West 2005).

Our primary objective in construing any statute is, like that of the courts, to effectuate the intent of the Legislature. *Presidio Indep. Sch. Dist. v. Scott*, 309 S.W.3d 927, 930 (Tex. 2010). In order to effectuate that intent, courts, and by extension this office, rely on the plain language of the statute. *Leland v. Brandal*, 257 S.W.3d 204, 206 (Tex. 2008). On the basis of the plain language of section 351.0415, it is clear that the revenue derived from items sold in a jail commissary is exclusively controlled by the sheriff. Because a prepaid phone card, as you have described it, is an item sold in a jail commissary, it follows that the revenue derived from the sale of prepaid phone cards sold in a jail commissary must be credited to the sheriff.

In your request letter, you note multiple attorney general opinions that have addressed the interaction between inmate commissary services and inmate telephone services. Request Letter at 2–3. Less than two years after the enactment of section 351.0415, this office considered whether proceeds from pay telephones in a county jail should be credited to the jail commissary account. Tex. Att'y Gen. Op. No. DM-19 (1991) at 1. The opinion, noting that one provision of section 351.0415 "specified that a jail commissary is to be operated in accordance with rules adopted by the Commission on Jail Standards" (the "Commission") relied on the Commission's placement of inmate telephone privileges and commissary privileges into "separate categories." *Id.* at 2 ("Telephone privileges and commissary privileges are treated as separate categories."). The opinion, observing that "[t]elephone privileges and commissary privileges have been listed as separate categories since a rule regarding inmate privileges was first adopted in 1976," declared that "[t]hat categorization indicates that the commission did not understand the term 'commissary' to include pay telephones." *Id.* at 2–3. Although Commission rules did not define the term "commissary," they

---

[2]"The sheriff or the sheriff's designee may use commissary proceeds only to:

> (1) fund, staff, and equip a program addressing the social needs of the inmates, including an educational or recreational program and religious or rehabilitative counseling;

> (2) supply inmates with clothing, writing materials, and hygiene supplies;

> (3) establish, staff, and equip the commissary operation and fund the salaries of staff responsible for managing the inmates' commissary accounts;

> (4) fund, staff, and equip both an educational and a law library for the educational use of inmates; or

> (5) fund physical plant improvements, technology, equipment, programs, services, and activities that provide for the well-being, health, safety, and security of the inmates and the facility.

TEX. LOC. GOV'T CODE ANN. § 351.0415(c) (West 2005).

did, and still do, provide separate rules for the "inmate telephone plan"[3] and the "inmate commissary plan."[4] The opinion concluded that "[p]roceeds from pay telephones in county jails are not governed by section 351.0415 of the Local Government Code." Consequently, "[a]ny proceeds the sheriff receives should be paid to the county treasurer." *Id.*

The Commission's rule regarding the "inmate telephone plan," unchanged in this regard since 1976, states that "[t]oll calls should be made on a prepaid or collect basis." 37 TEX. ADMIN. CODE § 291.1 (2010) (Tex. Comm'n on Jail Standards, Inmate Telephone Plan). When the rule was adopted, the phrase "prepaid basis" did not refer to prepaid phone cards. Rather, it referred to a

---

[3]This rule provides as follows:

Each facility shall have and implement a written plan, approved by the commission, governing the availability and use of inmate telephones.

(1) Immediately after booking, but in no case later than four hours after arrival, a person shall be permitted to make at least two completed telephone calls. Toll calls should be made on a prepaid or collect basis. A free telephone shall be available for local calls for those inmates who otherwise would be unable to complete the two required calls. Facilities may have a special line reserved for inmate use.

(2) Each facility shall provide for reasonable access, both local and long distance, between an inmate and his/her attorney, family, and friends. This may be on a prepaid or collect basis. The plan shall contain procedures for the handling of emergency calls.

37 TEX. ADMIN. CODE § 291.1 (2010) (Tex. Comm'n on Jail Standards, Inmate Telephone Plan).

[4]This rule provides as follows:

Each facility shall have and implement a written plan, approved by the commission, governing the availability and use of an inmate commissary which allows for the purchase of hygiene items and sundries. The plan shall:

(1) indicate types of services, in-house or vendor;

(2) indicate frequency of services;

(3) provide procedures for inmates obtaining items;

(4) provide for yearly audits by the county auditor in accordance with the Local Government Code, § 351.0415. The audits shall be submitted to the commission not later than ten days following completion; and

(5) provide that all expenditures from commissary proceeds be made in accordance with the Local Government Code, § 351.0415.

*Id.* § 291.3 (Inmate Commissary Plan).

method by which the sheriff or the county would pay for the call and then deduct the charges from the inmate's commissary account.[5]

Subsequent opinions have affirmed the conclusion of Attorney General Opinion DM-19. *See,* *e.g.,* Tex. Att'y Gen. LO-96-032 (Commission on Jail Standards not authorized to adopt a rule placing telephone services within the commissary fund); Tex. Att'y Gen. LO-97-030, at 3–4; Tex. Att'y Gen. Op. No. GA-0059 (2003). However, each of those opinions considered telephone services that were provided separately from the commissary. They do not address the situation at issue here, in which a prepaid phone card is being sold as an item in the jail commissary.

A Commission rule declares that an "inmate commissary" must allow "for the purchase of hygiene items and sundries." 37 TEX. ADMIN. CODE § 291.3 (2010) (Tex. Comm'n on Jail Standards, Inmate Commissary Plan). One dictionary defines "sundries" as "various items not important enough to be mentioned individually." THE NEW OXFORD AMERICAN DICTIONARY 1703 (2001). A prepaid phone card is, by this definition, a "sundry," indistinguishable from any other item that might be sold in a county jail commissary. An inmate need not intend to procure such a card in order to obtain telephone service for himself at the county jail. Rather, he might purchase it simply as a gift for another, or for himself upon release from jail. Moreover, as you have stated, the selling of the prepaid phone cards in the commissary "would be separate from the telephone service contract." Request Letter at 1. Finally, there is no suggestion that the sale of prepaid phone cards would replace the telephone service contract, or that inmates would always opt to use a prepaid phone card to obtain toll telephone service. Because there is no necessary correlation between the sale of a prepaid phone card and the provision of toll telephone service in a county jail, we find no relevant basis for distinguishing between a prepaid phone card and other commissary items. As such, revenue from its sale is a part of the commissary fund, and thus subject to the sole control of the sheriff.

---

[5]Telephone Conversation with Adan Munoz, Jr., Executive Director, Texas Commission on Jail Standards (June 15, 2010).

# S U M M A R Y

Revenue from the sale of prepaid phone cards in the county jail commissary should be credited to the sheriff for the use of county jail inmates rather than to the general fund of the county.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

NANCY S. FULLER
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee