

# IN THE
# TENTH COURT OF APPEALS

### No. 10-09-00236-CV

**DR. STEVEN LEON GATES, D.O. AND/OR**
**DR. STEVEN LEON GATES, D.O., P.A.,**

                                                    **Appellants**

 **v.**

**JACK THOMAS ALTARAS,**

                                                    **Appellee**

### From the 413th District Court
### Johnson County, Texas
### Trial Court No. C200800182

## MEMORANDUM OPINION

Appellants Dr. Steven Leon Gates, D.O. and/or Dr. Steven Leon Gates, D.O., P.A.. (Gates) appeal the denial of Gates's objections to an amended expert report and motion to dismiss. Because the trial court erred in finding the amended expert report to be sufficient, we reverse and remand the case for further proceedings.

BACKGROUND

Jack Altaras went to see his dentist because he had pain in his right jaw. He was told he needed his wisdom teeth removed. Five days later, Altaras visited Gates

because he had a cough, a fever, heaviness in his chest, and pain in his right jaw. A chest x-ray was taken and Altaras was given antibiotics. Four days later, Altaras went to the hospital with shortness of breath. He was having a heart attack and bypass surgery was performed.

Altaras sued Gates for negligence. Within 120 days, Altaras presented an expert report in the form of an affidavit from Dr. Bernard A. McGowen. Gates filed objections to the report and a motion to dismiss. Both were denied and Gates appealed. *See* 10-08-00239-CV. A few weeks prior to oral argument in the appeal, Gates and Altaras reached an agreement where Altaras would submit a supplemental report within 45 days and Gates would dismiss his appeal. After the supplemental report was presented, Gates again filed, in one document, objections and a motion to dismiss. The trial court again denied relief. Gates appealed.

### APPLICABLE LAW

Section 74.351 of the Civil Practices and Remedies Code provides that within 120 days of filing a health care liability claim, a claimant must serve a curriculum vitae and one or more expert reports regarding every defendant against whom a health care claim is asserted. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (Vernon Supp. 2009). "Section 74.351 has numerous subparts, including:

. subpart (b) requiring trial courts to dismiss a claim with prejudice and award fees if "an expert report has not been served" by the statutory deadline;

. subpart (c) allowing a 30-day extension of the deadline if a report is found inadequate; and

. subpart (l) providing that a motion challenging a report's adequacy should be granted only if the report does not represent a good-faith effort to comply with the statute." *Lewis v. Funderburk*, 253 S.W.3d 204, 207 (Tex. 2008) (footnotes omitted); TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b), (c), (l) (Vernon Supp. 2009).

When considering a motion to dismiss under Section 74.351, the issue for the trial court is whether the report represents a good-faith effort to comply with the statutory definition of an expert report. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); *American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878 (Tex. 2001). An "expert report" means:

> A written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding the applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards and the causal relationship between that failure and the injury, harm, or damages claimed.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (Vernon Supp. 2009). To constitute a "good-faith effort," the report must discuss the standard of care, breach, and causation with sufficient specificity to fulfill two purposes: (1) to inform the defendant of the specific conduct the plaintiff has called into question; and (2) to provide a basis for the trial court to conclude that the claims have merit. *Bowie*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 879.

The report must include the expert's opinion on each of the three elements that the statute identifies: standard of care, breach, and causal relationship. *Bowie*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 878. A report cannot merely state the expert's conclusions about these elements. *Bowie*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 879. "Rather, the

expert must explain the basis of his statements to link his conclusions to the facts." *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999).

We review a trial court's denial of a motion to dismiss under section 74.351 for abuse of discretion. *Bowie*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 875.

**Sufficiency of the Report**

In his first issue, Gates contends the trial court erred in finding the expert report to be sufficient. McGowen stated in his affidavit that Altaras "presented" to his dentist on February 15, 2006 complaining of right jaw pain. Altaras was told that his wisdom teeth needed to be extracted. McGowen stated that on February 20, 2006, Altaras "presented" to Gates complaining of a cough, fever, heaviness in the chest, and right jaw pain. Altaras was treated with antibiotics. A chest x-ray was taken which revealed "Bilateral Perihilar Infiltrates." This term was not defined in McGowen's report. McGowen further stated that on February 24, 2006, Altaras "presented" to the hospital complaining of shortness of breath and right jaw pain. Altaras was diagnosed with an "acute inferior myocardial infarction."

McGowen stated many times that he was familiar with the standard of care regarding patients such as Altaras. When reciting the standard in paragraph 18 of his affidavit, McGowen stated that the standard of care required Gates to properly diagnose the cardiac disease, refer Altaras to a cardiologist and order appropriate tests, including a stress test. McGowen opined that Gates's failure to perform any of these steps fell below the standard of care. McGowen concluded that Gates's deviation from the standard of care resulted in "the episode of cardiogenic shock. Proximate cause of

his physical impairment including partial blindness in both eyes. [sic]."  McGowen further concluded that deviations from the standard of care caused Altaras extensive damages and unnecessary mental pain and suffering and would result in needless and unnecessary treatment and billing which would not have been required but for the breaches.

Assuming without deciding that McGowen even properly stated a standard of care and breach of that standard, McGowen wholly fails to explain the causal relationship between Gates's failures and the injury, harm, or damages claimed by Altaras.  McGowen must explain the basis of his statements to link his conclusions to the facts.  He did not.  After reading the affidavit, we are at a loss to understand how Gates's alleged failure to diagnose cardiac disease, refer Altaras to a cardiologist, and order "appropriate" tests, resulted four days later in cardiogenic shock, physical impairment including partial blindness in each eye, unspecified damages, and unspecified unnecessary mental pain and suffering.  Further, the affidavit does not provide an explanation as to how complying with the non-specific standard of care would have prevented the injuries.  Thus, the affidavit does not meet the requirements of an expert report.

Accordingly, the trial court erred in finding the expert report to be sufficient and Gates's first issue is sustained.

**Remedy?**

Gates argues that because the report was insufficient and because Altaras had already had one extension, the trial court was required to dismiss Altaras's case.

Section 74.351(c) provides that if an expert report has not been served within the 120-day time period specified by subsection (a) because elements of the report are found deficient, the trial court may grant one 30-day extension to the claimant to cure a deficiency in an expert report. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c) (Vernon Supp. 2009). The term "may" as used in subsection (c) vests the trial court with discretion to grant a 30-day extension. *Bosch v. Wilbarger Gen. Hosp.*, 223 S.W.3d 460, 465 (Tex. App.—Amarillo 2006, pet denied); *Hardy v. Marsh*, 170 S.W.3d 865, 870-71 (Tex. App.—Texarkana 2005, no pet.). But Altaras argues that the trial court never granted him a previous 30-day extension.

To resolve this dispute, we must look at what happened in this case prior to the events giving rise to this appeal. In 2008, Gates objected to Altaras's first expert report and filed a motion to dismiss. The trial court found the report to be sufficient and denied Gates's motion to dismiss. Gates appealed the trial court's ruling. Just prior to oral argument in that appeal, Gates and Altaras reached an agreement which was placed on the record and was made a part of this appeal. The entire "agreement" is as follows.

> Counsel for Altaras: …The Defendant will give the Plaintiff 45 days to supplement their report. In exchange, the Defendant will drop their case in the Court of Appeals, and that's pretty much it.

> Counsel for Gates: I guess the purpose of the extension is to cure the deficiencies we've pointed out.

> Counsel for Altaras: Cure the deficiencies they've pointed out, and that way we will not have to go down to the Court of Appeals again.

Counsel for Gates:  If necessary, if we still think it's insufficient, we'll come back and see Judge Bosworth.

Counsel for Altaras:  That's true.

Court:  So this has resolved your conflict at the Court of Appeals with the interlocutory appeal?

Counsel for Gates:  Yes, Your Honor.

Court:  And you've resolved how to handle this expert report; is that correct?

Counsel for Altaras:  That's correct.  And you will dismiss your – your appeal.

Counsel for Gates:  Right.  I'll go do that….

Court: Okay.  Thank you.

Although not the most artfully worded, it is clear that Altaras agreed the report was deficient and that to avoid an adverse decision by this Court on appeal, Altaras would supplement the report within 45 days.  Gates, in turn, would not oppose the extension and would dismiss his interlocutory appeal.  However, the Texas Supreme Court has held that the plain language of subsection (c) provides for an extension to cure when elements of a report have been *found* deficient.  *Leland v. Brandal*, 257 S.W.3d 204, 208 (Tex. 2008) (emphasis in opinion).  Elements have only now been *found* to be deficient.  Therefore, we must remand this appeal to the trial court for consideration of a 30-day extension pursuant to subsection (c).[1]  *See id*. at 207.

---

[1] This may appear counterintuitive to the purpose of the statute which is to "reduce excessive frequency and severity of health care liability claims," Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.11(b)(1), 2003 Tex. Gen. Laws 847, 884, and is a disincentive for parties to resolve problems with expert reports by agreement and without court intervention.  We are bound, however, by the holding of the Texas Supreme Court.

**Remaining Issues**

In his second issue, Gates argues that the trial court erred in finding that the expert was qualified to render an opinion on causation.[2]  Because of our disposition of the first issue, we need not discuss Gates's second issue.  Further, as to Gates's third issue, because the affidavit is deficient as to Gates, it is deficient as to Gates, P.A. as well; and at this juncture, we need not determine whether the affidavit is the equivalent of no report as to Gates, P.A.

CONCLUSION

Having determined that the expert report is deficient, we reverse the trial court's order and remand the case to the trial court for further proceedings consistent with this opinion.

TOM GRAY<br>Chief Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
Reversed and remanded
Opinion delivered and filed March 10, 2010
[CV06]

---

[2] Having found one deficiency that requires a remand, we do not believe it is necessary to identify every deficiency in the report.  Having been placed on notice of the argued deficiencies, Altaras would presumably take such precautions as may be necessary to avoid another determination of a deficiency after which there would be no opportunity to cure.