

# IN THE
# TENTH COURT OF APPEALS

### No. 10-09-00297-CV

**GRANBURY HOSPITAL CORPORATION
D/B/A LAKE GRANBURY MEDICAL CENTER,**

                                              **Appellant**

 **v.**

**DONNA HOSACK AS REPRESENTATIVE
OF THE ESTATE OF TEMPLE HALL,**

                                              **Appellee**

### From the 18th District Court
### Johnson County, Texas
### Trial Court No. C200900041

## MEMORANDUM OPINION

Donna Hosack, as Representative of the Estate of Temple Hall, sued Granbury Hospital Corporation d/b/a Lake Granbury Medical Center ("LGMC") for negligence, gross negligence, and wrongful death.[1] After receiving Hosack's expert reports, LGMC filed a motion to dismiss Hosack's lawsuit pursuant to section 74.351 of the Civil Practice and Remedies Code. The trial court denied the motion. On appeal, LGMC

---

[1] Hosack sued other defendants who are not parties to this appeal.

challenges the denial of its motion to dismiss, arguing that Hosack's expert reports are insufficient as to causation. We reverse and remand.

## STANDARD OF REVIEW AND APPLICABLE LAW

When considering a motion to dismiss under section 74.351, the issue for the trial court is whether the report represents a good-faith effort to comply with the statutory definition of an expert report. *See Bowie Mem'l Hosp. v. Wright,* 79 S.W.3d 48, 52 (Tex. 2002); *see also Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 878 (Tex. 2001). An "expert report" is:

> A written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding the applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards and the causal relationship between that failure and the injury, harm, or damages claimed.

TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (Vernon Supp. 2009). To constitute a "good-faith effort," the report must discuss the standard of care, breach, and causation with sufficient specificity to: (1) inform the defendant of the specific conduct the plaintiff has called into question; and (2) provide a basis for the trial court to conclude that the claims have merit. *Bowie,* 79 S.W.3d at 52; *Palacios,* 46 S.W.3d at 879.

The trial court should look no further than the report itself, because all the information relevant to the inquiry is contained within the document's four corners. *Bowie,* 79 S.W.3d at 52; *Palacios,* 46 S.W.3d at 878. Although an expert report need not marshal all the plaintiff's proof, the expert may not merely state conclusions about the required elements of standard of care, breach, and causation. *Bowie,* 79 S.W.3d at 52.

The report must include the expert's opinion on each of the three elements. *Id.*; *Palacios*, 46 S.W.3d at 878. The expert must explain the basis of his statements to link his conclusions to the facts. *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex. 1999).

We review a trial court's order on a motion to dismiss a claim for failure to comply with the expert report requirements under an abuse-of-discretion standard. *Bowie*, 79 S.W.3d at 52; *Palacios*, 46 S.W.3d at 878. When reviewing matters committed to the trial court's discretion, we may not substitute our own judgment for the trial court's judgment. *See Flores v. Fourth Ct. of Appeals*, 777 S.W.2d 38, 41 (Tex. 1989).

## EXPERT REPORTS

Dr. Lige B. Rushing explained that Hall, born in 1935, had a lengthy history of medical conditions. After suffering from a fall, Hall was admitted at LGMC. Shortly thereafter, Hall developed pressure ulcers.

Rushing explained that the standard of care required LGMC and its staff to provide: (1) "that level of care and treatment that a reasonable, prudent, similar facility would provide under the same or similar circumstances;" (2) "that level of care, treatment, and supervision to prevent accidents;" and (3) "the necessary care, treatment, and supervision to prevent the development of pressure ulcers." He explained that the standard of care for preventing and/or treating pressure ulcers requires: (1) "assessment of the residents [sic] risks for skin breakdown and if the resident is at risk for skin breakdown, [] implement a plan of care to address that risk;" (2) "proper pressure relieving strategies, i.e. turning and repositioning at least every two hours,

adequate nutrition and hydration;" and (3) "proper hygiene such as keeping the residents clean and their environment free of urine, feces, and sweat as is possible."

Rushing opined that LGMC knew of Hall's "increased risk for development of pressure ulcers because of her advanced age, her diabetes, and her limited mobility." He explained that LGMC breached the standard of care by leaving Hall on a bedpan too long, resulting in the development of pressure ulcers and "set[ting] in motion a connected series of events resulting in the pressure ulcer photographed on 03/12/07 and which persisted until her death on 04/11/07." Rushing concluded:

> As a result of these pressure ulcers, Mrs. Hall experienced decreased mobility, increased metabolic requirements, worsening of the ulcer, and the pressure ulcer was a source of infection and toxins, all of which contributed to her death.

Absent these failures, "Hall would not have died when she did."

In her expert report, registered nurse Suzanne Frederick explained the standard of care for the LGMC nurses, opined that Hall was "at risk for skin breakdown," and concluded that Hall was "left on the bedpan too long, which was substandard" and that this "breach of the standard of care proximately caused a linear pressure ulcer around Ms. Hall's buttocks and upper thighs." She concluded that "based on a reasonable degree of nursing certainty, [] this pressure ulcer would not have occurred had the nurses removed Ms. Hall from the bedpan timely."

### ANALYSIS

LGMC challenges both Frederick's report and Rushing's report on the basis that neither is sufficient as to the element of causation.

First, LGMC correctly argues that Frederick is not qualified as an expert on causation. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.403(a) (Vernon 2005); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(5)(C). She may, however, testify as to the standard of care and breach of that standard. *See HealthSouth Corp. v. Searcy*, 228 S.W.3d 907, 909 (Tex. App.—Dallas 2007, no pet.).

Second, LGMC argues that Dr. Rushing's report is "conclusory, speculative, and requires the trial court to infer a causal link between the alleged wrong-doing and the patient's death over six weeks later." We agree.

In his report, Rushing concludes that LGMC's conduct violated the standard of care by allowing Hall to remain on a bedpan too long, resulting in the development of pressure ulcers, which released infection and toxins into Hall's system, and launching a series of events that eventually contributed to her death. However, his report indicates that Hall died of cardiorespiratory arrest. Rushing does not explain how Hall's development of pressure ulcers resulted in her cardiorespiratory arrest. Because Rushing's report fails to connect the occurrence of pressure ulcers to Hall's death, his report is insufficient on the element of causation. *See Regent Health Care Ctr. of El Paso, L.P. v. Wallace*, 271 S.W.3d 434, 441 (Tex. App.—El Paso 2008, no pet.) ("[W]hile the report indicates that the breach of the standard of care resulted in worsening of the described skin conditions, there is no linkage to the cause of death, aside from the assertion of a close temporal proximity between the conditions and the premature death."); *see also Nexion Health at Southwood, Inc. v. Judalet*, No. 12-08-00464-CV, 2009 Tex. App. LEXIS 7404, at *11 (Tex. App.—Tyler Sept. 23, 2009, no pet.) (mem. op.)

(Expert report was deficient on causation because "[expert] failed to explain the causal relationship between the decedent's leg fracture and her death;" *i.e.*, "how a fractured leg caused her to experience congestive heart failure.").

Nevertheless, Hosack conditionally argues that she is entitled to remand of this cause to the trial court to consider granting a thirty-day extension.[2]

If an adequate expert report has not been served within the period specified by Subsection (a) because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency. TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(c). Where a report is not "so deficient as to constitute no report at all," a plaintiff is entitled to remand of the case to the trial court to consider granting an extension to cure. *Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 670-71 (Tex. 2008) (citing *Ogletree v. Matthews*, 262 S.W.3d 316, 323 (Tex. 2007) (Willett, J., concurring) and *Lewis v. Funderburk*, 253 S.W.3d 204, 211 (Tex. 2008) (Willett, J., concurring)).

We cannot say that Rushing's report is "so deficient as to constitute no report at all." *Gardner*, 274 S.W.3d at 670; *see Leland v. Brandal*, 257 S.W.3d 204, 207-08 (Tex. 2008). The report identifies the standard of care and the manner in which the standard of care was not met. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6). It is deficient with respect to the element of causation. Under these circumstances, Hosack is entitled to remand. *See Gardner*, 274 S.W.3d at 670; *see also Leland*, 257 S.W.3d at 207-08; *Wallace*, 271 S.W.3d at 441; *Judalet*, 2009 Tex. App. LEXIS 7404, at *14.

---

[2] In her response to LGMC's motion to dismiss, Hosack requested an additional thirty days to cure in the event her reports were found to be deficient. The trial court denied the motion to dismiss; thus, it did not rule on Hosack's request.

In summary, we sustain LGMC's sole issue, reverse the trial court's order denying LGMC's motion to dismiss, and remand this cause for further proceedings consistent with this opinion.

FELIPE REYNA
Justice

Before Chief Justice Gray,
     Justice Reyna, and
     Justice Davis
Reversed and remanded
Opinion delivered and filed April 28, 2010
[CV06]